IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ARETHA R.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) Case No. 22-CV-244-MTS |
| | ) |
| **KILOLO KIJAKAZI, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Aretha R. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **affirms** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account her age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is

"more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). A court, however, may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**Background and Procedural History**

On August 4, 2020, Plaintiff filed applications for Title II disability insurance benefits (42 U.S.C. § 401, *et seq.*) and for Title XVI supplemental security income (42 U.S.C. § 1381, *et seq.*) under the Social Security Act. (R. 10, 341-52, 370-76). She alleged an inability to work beginning on May 1, 2007, due to limitations resulting from bipolar disorder, depression, neck condition, knee condition, borderline diabetic, and anxiety. (R. 408, 414). Plaintiff was fifty-two years old at the time of the ALJ's decision. (R. 20, 414). She has a ninth-grade education and no past relevant work. (R. 16, 19-20, 54-55, 71, 1982).[1]

---

[1] In the decision, the ALJ misstated in certain findings that Plaintiff has a high school education. In a footnote to her opening brief, Plaintiff states that the Plaintiff retains a "limited education." Docket No. 14, p. 3. Plaintiff makes no argument that the ALJ's misstatement as to Plaintiff's education level affected the ALJ's decision. The Court finds that any issue as to Plaintiff's education level is therefore waived by Plaintiff. *See Richards v. Colvin*, 640 Fed. Appx. 786, 792 (10th Cir. 2016) (declining to consider argument that was inadequately raised in opening brief on appeal), citing *Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) ("[C]ursory statements, without supporting analysis and case law" are insufficient to invoke [review]").

Plaintiff's application was denied both initially and upon reconsideration. (R. 226-28, 229-31, 242-47, 248-52). At Plaintiff's request, ALJ Patricia Witkowski Supergan conducted an administrative hearing on December 9, 2021. The hearing was held by teleconference pursuant to COVID-19 procedures. (R. 10, 34-76, 239-40, 329-30). At the hearing, Plaintiff agreed to amend her onset date to August 4, 2020. (R. 43-44). ALJ Supergan issued a decision on December 30, 2021, denying benefits and finding Plaintiff not disabled. (R. 10-21). Plaintiff sought review by the Appeals Council, which it denied on April 22, 2022. (R. 1-5). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since May 1, 2007, the alleged onset date. (R. 12). At step two, she found Plaintiff suffered from severe impairments of degenerative disc disease, diabetes mellitus, bipolar disorder, marijuana use disorder, and alcohol abuse disorder. *Id*. The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 13). Based upon her consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" with the following additional limitations:

> [S]he can occasionally climb ramps and stairs but never ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch and crawl; frequently reach in all directions including overhead with both upper extremities; and frequently handle; finger and feel with both upper extremities. She can tolerate occasional exposure to and can occasionally work around vibration and hazards such as moving machinery or unprotected heights. She can perform work that involves simple routine tasks requiring no more than short simple instructions and simple work related decision making with few work place changes. She can maintain occasional

>contact with the general public of a brief, superficial and incidental nature and occasional interaction with supervisors and co-workers.

(R. 15).

At step four, the ALJ determined Plaintiff had no past relevant work. (R. 19). After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of merchandise marker, office helper, and mail room clerk, all of which she found existed in significant numbers in the national economy. (R. 20-21, 71-72). As a result, the ALJ found Plaintiff had not been under a disability from May 1, 2007, through the date of the decision. (R. 21).

## Errors Alleged for Review

Plaintiff raises three allegations of error in her challenge to the Commissioner's denial of benefits on appeal: (1) the ALJ failed to apply the correct legal standards when assessing the medical opinions in the record; (2) the ALJ improperly assessed the consistency of Plaintiff's complaints with the record evidence; and (3) the ALJ failed to consider the combined effect of Plaintiff's impairments when assessing the RFC, resulting in an error at step five of the analysis. *See* Docket No. 14, p. 4.

## Reopening of Prior Decisions

As part of her argument regarding the opinion evidence, Plaintiff initially asserts that the ALJ effected a *de facto* reopening of earlier claims that covered prior adjudicative periods. She relies on the case of *Taylor ex rel. Peck v. Heckler*, 738 F.2d 1112 (10th Cir. 1984), arguing that the ALJ *de facto* reopened the prior claims when referring to her alleged onset date of May 1, 2007, and considering evidence from the prior claims in the decision. Plaintiff contends that this required that the ALJ explain why Plaintiff's current RFC was less restrictive than the RFC assessment by another ALJ from the prior claim, specifically referencing Plaintiff's knee

5

impairment and its worsening over time. Docket No. 14, pp. 5-6. The Commissioner argues there is no merit to Plaintiff's contention that the ALJ reopened a prior claim because (1) Plaintiff was outside the time period under the regulations to do so, and (2) the ALJ's treatment of the evidence did not amount to the reopening of a prior claim. As discussed below, the Court agrees with the Commissioner's arguments.

The regulations provide that a determination or decision under Title II may be reopened for any reason "[w]ithin 12 months of the date of the notice of the initial determination[,]" or "[w]ithin four years of the date of the notice of the initial determination if we find good cause . . . to reopen the case[.]" The regulations provide the same for a decision under Title XVI, except it must be within two years of the date of the notice of the initial determination. 20 C.F.R. §§ 404.988(a-b), 416.1488(a-b). The regulations also provide that a decision or determination may be reopened "[a]t any time" under certain circumstances that are not at issue in the case. 20 C.F.R. §§ 404.988(c), 416.1488(c). The regulatory time period appears to apply to the *de facto* reopening of a case. *See Taylor for Peck*, 738 F.2d at 1114 (referencing the regulations for reopening a decision for "good cause," discussing *de facto* reopening, and noting that the plaintiff's second application was filed "approximately two and one-half years after the initial determination"); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) (finding the *de facto* reopening of the determination was within the four-year limit imposed under the regulations).

Here, Plaintiff filed applications for disability insurance benefits and supplemental security income which covered the period of April 6, 2005, her alleged onset date, until the date of the ALJ's decision on August 13, 2008. The applications were initially denied on August 7, 2006. Plaintiff did not appeal the decision. (R. 77-87). Plaintiff then filed another application for supplemental security income, with an adjudicative period of November 5, 2015, the date the

application was filed, until February 13, 2018, the date of the ALJ's decision. Plaintiff's claim was initially denied on January 21, 2016. She did not appeal the decision. (R. 88-101). Plaintiff's current applications for disability benefits and supplemental security income were filed on August 4, 2020, with an alleged onset date of May 1, 2007. (R. 7-21). Thus, Plaintiff's August 2020 applications fall outside the two- and four-year regulatory requirements for the reopening of her prior applications.

      Moreover, even if Plaintiff could meet the regulatory time requirements for reopening, the record does not support a *de facto* reopening of a prior decision by the ALJ. Based upon the representation made by Plaintiff's counsel prior to the hearing, the ALJ requested that Plaintiff's attorney confirm with Plaintiff at the hearing that she intended to amend her onset date from May 1, 2007, to August 4, 2020. (R. 42-43, 396). When questioned at the hearing by her counsel and advised of the consequences of amending her onset date, Plaintiff confirmed and agreed to the amendment of her onset date to August 4, 2020, which the ALJ allowed. (R. 43-44). Although the ALJ references Plaintiff's alleged onset date of May 1, 2007, several times in the decision, she also specifically states in the decision that Plaintiff amended her alleged onset of disability date to August 4, 2020. (R. 10, 17). Further, the ALJ did not mention Plaintiff's prior applications in the decision, nor did she make any suggestion that she was reconsidering a prior application on the merits. Although she referenced evidence prior to the amended alleged onset date and from previously adjudicated periods, as stated in the decision, she did so to establish the history of Plaintiff's impairments: "A review of the hearing level record indicates that the claimant has history of degenerative disc disease; bipolar disorder with noted marijuana and alcohol abuse . . . as early as March 20, 2007 . . . with a range of treatment prior to the amended disability onset date." (R. 17). Such a review does not constitute a reopening of a prior claim. *See Hamlin v.*

7

*Barnhart*, 365 F.3d 1208, 1215 n.8 (10th Cir. 2004) (noting that medical evidence dating "from earlier, previously adjudicated periods . . . [is] nevertheless relevant to the claimant's medical history and should be considered by the ALJ" and rejecting the argument that examining that evidence somehow reopens a prior claim).

### The ALJ's Consideration of the Opinion Evidence

Plaintiff next argues the ALJ failed to properly consider the persuasiveness of the prior administrative opinions in the record. For claims filed after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under these rules, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must "articulate" in the decision how persuasive she finds each medical source's opinion by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[2]

---

[2] Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

8

The regulations explain that for supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(1), 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(2), 416.920c(c)(2).

Regarding Plaintiff's physical complaints, agency reviewer Ronald Painton, M.D., issued an initial determination on January 28, 2021, wherein he specifically noted Plaintiff's complaints of a knee condition, among others, and concluded Plaintiff could perform light work with postural limitations for occasional crawling and climbing of ramps/stairs, ladders, ropes and scaffolds. He determined Plaintiff had unlimited balance and could frequently stoop, kneel, and crouch. (R. 122, 127-30, 148, 153-56). On June 11, 2021, agency reviewer Sarah Yoakam, M.D., concluded on reconsideration that Plaintiff could perform light work with the same postural limitations imposed by Dr. Painton. (R. 175-76, 181-84, 203-04, 209-12). The ALJ addressed the reviewing physicians' opinions and found their determinations that Plaintiff could perform light work persuasive. She noted that "[n]othing in the hearing level evidence supports any additional limitations." (R. 19).

Plaintiff argues that the ALJ could not find the RFC determinations persuasive because the reviewing physicians' opinions failed to account for the RFC determination from the February 2018 decision associated with Plaintiff's prior application, which she contends included more restrictive limitations associated with her knee impairment. This argument, however, fails for two

9

reasons. First, as determined herein, the ALJ did not reopen the prior decisions from other adjudicative periods. Second, it is the ALJ who determines the RFC and not the agency reviewers. *See Howard v. Barnhart*, 379 F. 3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."). Here, the record shows the ALJ reviewed the evidence in the record, including evidence pertaining to Plaintiff's knee condition (R. 16-18), and she determined Plaintiff should be limited to light work "with the additional noted postural, manipulative and environmental limitations." (R. 19).[3] Thus, based upon her review of all the evidence, the ALJ imposed greater limitations than those imposed by the reviewing physicians. Although the ALJ's findings as to the reviewing physicians' opinions could have been more extensive, the Court finds the ALJ's analysis was sufficient in this case. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal").

Regarding Plaintiff's mental impairments, agency psychologist Deanna Gallavan, Ph.D., issued an initial determination on January 27, 2021, finding Plaintiff had the mental RFC to understand, recall, and perform simple and detailed tasks with routine supervision and make related decisions. Plaintiff could "focus and attend for two-hour periods with routine work breaks and pace and persist for [an] 8-hour workday and 40-hour workweek despite psychological symptoms." She could interact appropriately with co-workers and supervisors for incidental work purposes, interact appropriately for occasional public contact, and adapt to a work setting and some

---

[3] The ALJ's RFC included manipulative and environmental limitations not included in the RFC's of the reviewing physicians, and it also limited Plaintiff to no climbing of ladders, ropes, or scaffolds and to only occasional balance, stoop, kneel, crouch, and crawl. (R. 15).

forewarned changes in a usually stable work setting. (R. 130-34, 156-60). On reconsideration, agency psychologist Joan Holloway, Ph.D., considered the evidence and on June 9, 2021, she reached the same mental RFC as Dr. Gallavan. (R. 184-88, 212-16).

Plaintiff argues the ALJ failed to properly explain her consideration of the opinions of the agency psychological consultants when finding them persuasive. She asserts that the agency psychological consultants' opinions are not supported by the evidence they cited. She further contends that the ALJ fails to explain how the record as a whole supports her findings, arguing instead that the record supports the findings of the examining psychologist, Melinda Shaver, Ph.D.

The ALJ discussed in detail the evidence she relied upon when assessing Plaintiff's mental RFC, including Plaintiff's mental health treatment through Morton Comprehensive Health and Family and Children Services. (R. 17-18, 2031-33, 2106-35). The ALJ found the opinions of the agency psychologists were persuasive. (R. 19). She also discussed the psychological examination of Dr. Shaver, who conducted an examination of Plaintiff by telehealth on January 21, 2021. (R. 1980-83). The ALJ determined that Dr. Shaver's opinion was not persuasive, correctly noting that her opinion that Plaintiff did not "appear emotionally capable of employment" was a determination reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i) (indicating statements from a medical source on issues "reserved to the Commissioner" are "inherently neither valuable nor persuasive" and stating that an ALJ is not required to provide "any analysis about how [she] considered such evidence . . . ."). The ALJ also concluded that Plaintiff's mental status findings by Dr. Shaver did not support Dr. Shaver's ultimate opinions, with the exception of Plaintiff's subjective complaints of anger. (R. 19).

Here, Plaintiff disagrees with the agency psychologists review of the evidence, including Dr. Shaver's findings. She also disagrees with the ALJ's decision finding Dr. Shaver's opinion

11

unpersuasive, arguing that the record evidence is consistent with Dr. Shaver's opinions. The Court views Plaintiff's arguments as a request that the Court re-weigh the evidence, which it cannot do. *See Casias*, 933 F.2d at 800. Although the ALJ's evaluation of the agency psychologists' opinions could have been more detailed, the ALJ's decision reveals a thorough discussion of the evidence pertaining to Plaintiff's mental impairments, and the Court can follow the ALJ's reasoning for reaching the mental RFC. *See Keyes-Zachary v. Astrue*, 695 F.3d at 1166. For this reason, the Court finds the ALJ's analysis was legally sufficient.

### The ALJ's Consistency Determination

Plaintiff further takes issue with the ALJ's evaluation of her reported symptoms, specifically associated with her knee impairment and mental impairments, arguing the ALJ failed to properly consider the consistency of her complaints with the record evidence. When evaluating a claimant's symptoms, the ALJ uses a two-step process:

> First, [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, . . . [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]"

Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment other than medication for relief of pain or other symptoms; (vi) any other measures used by the claimant to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *Id*. at *7-8.

12

Deference must be given to an ALJ's evaluation of a claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. An ALJ's findings, however, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "[S]o long as the ALJ 'sets forth the specific evidence [s]he relies on in evaluating the [consistency of the claimant's subjective complaints],' [s]he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary*, 695 F.3d at 1167, quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of the evaluation of Plaintiff's subjective symptoms, the ALJ noted the two-step process set forth in SSR 16-3p and the requirements under 20 C.F.R. §§ 404.1529, 416.929. (R. 15-16). She specifically considered Plaintiff's hearing testimony, including that she needed to elevate her legs and use a cane because of her knee, and her testimony regarding her mental functional status. (R. 16-17). She discussed in detail the medical evidence, specifically addressing several of the consistency factors in the decision. For example, the ALJ discussed Plaintiff's physical and mental examinations concluding most had unremarkable findings (R. 17-19), her reported cane use even though examinations showed a normal range of motion and Plaintiff never reported cane use on her function report (R. 17, 19), the conservative and standard nature of her treatment (R. 19), her normal mental status examinations and use of medication to control symptoms without side effects (R. 18), and Plaintiff's daily activities (R. 18-19). Based upon her review of Plaintiff's statements and the evidence, the ALJ concluded Plaintiff's impairments did not result in the degree of functional limitation that Plaintiff alleged. (R. 19).

The Court finds the ALJ conducted an appropriate analysis of Plaintiff's alleged symptoms and cited evidence in support of her consistency determination. Based on the evidence of record

before the Court, it cannot determine that the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801.

### The ALJ's RFC Determination

In her final argument, Plaintiff contends the ALJ failed to consider the combined effect of her impairments when assessing the RFC. She specifically argues the ALJ did not analyze the combined effect of her worsening knee impairment with her degenerative disc disease and other impairments. She further asserts the ALJ failed to consider her mental impairment with her other impairments.

When assessing the RFC, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe.*" *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) (emphasis in original), citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We will consider all of [a claimant's] medically determinable impairments . . . including [ ] medically determinable impairments that are not 'severe,' . . . when we assess [a claimant's RFC]."). Here, the record shows that the ALJ not only stated in the decision that she considered all of Plaintiff's medically determinable impairments, even those that were not severe when assessing the RFC (R. 13), but her discussion of the evidence reveals that she considered Plaintiff's knee impairment, degenerative disc disease, and her mental impairments when determining the RFC. (R. 15-19). Based upon the evidence, the ALJ determined Plaintiff had an RFC for light work with additional limitations, and she also included mental functional limitations in the RFC. (R. 15). Moreover, Plaintiff has pointed to no medical records that show that the combined effect of her impairments would result in greater functional limitations than those the ALJ included in the RFC. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) ("Eggleston argues that the ALJ did not consider the combined effects of his impairments. The

ALJ's opinion addresses Eggleston's various impairments, and we find nothing to suggest they were not properly considered."). The Court therefore finds no merit to Plaintiff's argument.

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 5th day of June, 2023.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRCT COURT